UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Sheila Hanenburg,

    Plaintiff,

v.                                   MEMORANDUM OPINION
                                                AND ORDER
                                                Civil No. 06-4760

Qwest Corporation and
Qwest Business Resources, Inc.,

    Defendants.
_____

    Michael O'Tool, Counsel for Plaintiff.

    Bradley J. Lindeman and Margaret R. Ryan, Meagher & Geer, P.L.L.P. and Craig T. Boggs and Todd M. Church, Perkins Coie LLP, for and on behalf of Defendants.

_____

This matter is before the Court upon Defendants Qwest Corporation and Qwest Business Resources, Inc.'s ("Qwest") motion for summary judgment.

Background

Plaintiff was employed by Qwest from 1999 until her termination in 2006, as a Central Office Equipment Installation Technician. In that capacity, she was responsible for the installation of fiber-optic equipment in Minnesota, Iowa,

North Dakota and South Dakota. This position required that Plaintiff maintain a valid driver's license and to operate a motor vehicle.

On March 16, 2006, Plaintiff was involved in a car accident and was cited for driving while intoxicated. On that date, Plaintiff called her supervisor, Kathie Carlson, to inform her of the accident. She did not, however, inform Carlson of the DWI, because she was not aware that she had an obligation to do so. Plaintiff Dep. I at p. 20-22. Plaintiff eventually entered a plea of guilty to the DWI in May 2006, but did not inform Qwest of her conviction at that time. Id.

On May 23, 2006, another installation technician told Carlson that Plaintiff had received a DWI and was driving without a license. Carlson Dep. at p. 47. Carlson then called the Human Resources department to ask how to proceed. She spoke with Shirley Gaertner, who told Carlson to ask to view Plaintiff's driver's license. Id. p. 54. The next day, Carlson asked Plaintiff to see her drivers license, but she said she didn't have it with her that day. Id.; Carlson Decl. ¶ 11; Plaintiff Dep. I at p. 179-181. On the following day, May 25, 2006, Carlson again asked Plaintiff for her drivers license, and Plaintiff responded that she did not have it with her. Carlson Decl. ¶ 12; Plaintiff Dep. I at p. 180-181. Carlson states that Plaintiff told her that she lost her license and needed to get a new one.

Carlson Decl. ¶ 12.

Carlson again called Human Resources, and was told by Lesli Bruden to set up a meeting with Plaintiff the next day to view her license. Carlson Decl. ¶ 13. Plaintiff then called LeAnn Dahlen, Carlson's supervisor, and stated she did not want to show her license to Carlson, but would show it to Dahlen. Id.; Dahlen Decl. ¶ 10. Dahlen agreed to meet with Plaintiff on May 30, 2006 so that Dahlen could view her drivers license. Dahlen Decl. ¶ 11. When Plaintiff showed Dahlen her drivers license, she noticed the edges were clipped. Id. Plaintiff told Dahlen the edges were clipped because she won money on pulltabs and the bartender clipped the edges to allow her card to go through the machine. Id. Plaintiff did not tell Dahlen at this meeting that she plead guilty to a DWI. Id. ¶ 13.

At around this time, Qwest began an investigation into Plaintiff's off-duty misconduct and acquired a case history from Hennepin County Criminal Court and a report from the Minnesota Department of Motor Vehicles. Id. ¶ 12. Pamela Pope, from Qwest's legal department, called Plaintiff on May 30, 2006 and asked why she did not report the DWI, and Plaintiff responded that she did not know that she had to. Pope Decl. ¶ 6. Plaintiff called Pope back the next day,

and said she had been confused, but was now willing to talk with her. Id. ¶ 8. During this conversation, Plaintiff did not mention the DWI because she did not know how to handle it. Id.

After speaking with Plaintiff, and after completing the investigation into Plaintiff's off-duty conduct, Carlson, Dahlen, Bruden and Dahlen's supervisor, David Moore, participated in a conference call to review the results of the investigation concerning Plaintiff's DWI. Carlson Decl. ¶ 14; Dahlen Decl. ¶ 13. After the call, Dahlen and Moore made the decision to terminate Plaintiff's employment. Dahlen Decl. ¶ 14. Carlson was not involved in this decision. Id.; Carlson Dep. at p. 58-59.

Plaintiff received a notice of termination on June 5, 2006. Church Aff., Ex. H. The basis for the termination was her off-duty misconduct and her violation of Qwest's Code of Conduct, which requires all employees who operate a motor vehicle as part of their work assignment to immediately report to their supervisor any off-the-job ticket and/or violation, including a DWI. Id.

After Plaintiff was terminated, she filed this lawsuit alleging that she was discriminated against and harassed based on her gender and sexual orientation by Carlson. Plaintiff has alleged that Carlson touched her on the knee a few

times, and asked her if she was gay.  Plaintiff further alleges that Carlson did not make any other direct sexual advances, but believed the touching was a sexual gesture or overture.  Plaintiff Dep. I at p. 31-33.  Plaintiff alleges that when she refused to respond to Carlson's actions, Carlson's attitude toward Plaintiff changed from supportive to hostile.  Complaint ¶ IV.  Plaintiff further alleges that Carlson harassed her by accusing her of lying as to where she and her crew were on a particular day, and put a letter in her personnel file to that effect.  Plaintiff Dep. I at p. 28-31.

Plaintiff also alleges that Carlson treated her and other women employees differently than male employees.  As examples, Plaintiff alleges that men were allowed to cheat on their time sheets and mileage, were allowed to take extensive breaks and to leave job sites early.  Women were not allowed to do any of these things.  A co-worker, Nancy Garbett, testified that she had seen the men's time sheets, and saw they got a lot of overtime.  Garbett Dep. at p. 12-13, 26-30, 50.

In her Complaint, Plaintiff asserted four claims against Qwest.  The first cause of action is a discrimination claim under the Minnesota Human Rights Act ("MHRA").  Plaintiff alleges that she was discriminated against on the basis of sex and was subject to a hostile environment.  The remaining causes of action

5

have since been voluntarily dismissed by Plaintiff. Accordingly, the only claims at issue in this motion are the discrimination claims.

Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact. Celotex, 477 U.S. at 323. This burden can be met "by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Id. at 325. The party opposing summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir.1995).

Analysis

    A. Disparate Treatment - Termination

To establish a prima facie case that she was terminated because of her gender and/or sexual orientation, Plaintiff must show 1) that she is a member of a

protected class; 2) she met Qwest's legitimate expectations; 3) she suffered an adverse employment action; and 4) similarly situated employees were treated differently. Feges v. Perkins Restaurants, Inc., 483 N.W.2d 701, 711 (Minn. 1992).

Qwest argues that Plaintiff cannot show that she was meeting Qwest's legitimate expectations at the time of her termination, nor can she show that similarly situated employees, not members of a protected class, were treated differently. To establish this element of a prima facie case under the MHRA, a plaintiff need only establish that she met the minimum objective qualifications for the job. Hoover v. Norwest Private Mortg. Banking, 632 N.W.2d 534, 544 (Minn. 2001). Plaintiff asserts that generally, her work record was very good. She usually was rated "exceeds all standards" or "meets all standards" during her performance reviews. Plaintiff further asserts that her supervisor testified at her deposition that she considered Plaintiff a good employee. Carlson Dep. at p. 65. Based on this record, the Court finds that Plaintiff has put forth sufficient evidence to demonstrate genuine issues as to whether she was qualified for the position she held at Qwest.

The Court finds, however, that Plaintiff has not put forth sufficient evidence demonstrating genuine issues that similarly situated males were treated

differently. Plaintiff concedes that she cannot identify any male employee who failed to report a DWI to management, and that when Qwest found out about the DWI, he was not terminated. Plaintiff Dep. I at p. 194-195.

Plaintiff did testify that Carlson generally treated male employees differently. She asserts they were allowed to do things, such as cheat on time cards and take extensive breaks, whereas women were not allowed the same privileges. As used in the context of discrimination claims, however, one is not similarly situated unless he/she has the same supervisor, is subject to the same standards and engaged in the same conduct without any mitigating or distinguishing circumstances. Muafong v. MN. Masonic Home-North Ridge Care Center, No. A06-899, 2007 WL 2034280 (Minn. Ct. App. July 17, 2007) (quoting E.E.O.C. v. Kohler Co., 335 F.3d 766, 775-76 (8th Cir. 2003)). Without evidence that similarly situated males were treated differently, the Court must find that Plaintiff has failed to demonstrate a genuine issue as to this element of a prima facie case.

Qwest further argues summary judgment on this claim is appropriate as Plaintiff has failed to put forward evidence of pretext. First, the parties do not dispute that Plaintiff entered a plea of guilty to a DWI charge, and that she did

8

not report said fact to her supervisor or anyone at Qwest at the time. It is also clear that Qwest's Code of Conduct required her to report any off-the-job ticket and/or violation, including a DWI. Church Aff., Ex. E., p. 8. While Plaintiff now argues that she was unaware of this policy, Qwest has put forth evidence indicating that Plaintiff acknowledged receiving and reviewing the Code of Conduct. Supplemental Church Aff., Ex. 2.

Second, the only person Plaintiff accuses of discriminating against her is her supervisor, Kathie Carlson, but the decision to terminate Plaintiff's employment was made by Carlson's supervisor, Dahlen and her supervisor, Moore. Dahlen Decl. ¶ 14. Plaintiff has not submitted any evidence to indicate that Carlson influenced the decision to terminate Plaintiff's employment. Accordingly, any evidence regarding Carlson's alleged dislike for Plaintiff or allegedly false and discriminatory actions do not apply to the decision to terminate Plaintiff's employment. Lee v. State of MN. Dept. Of Commerce, 157 F.3d 1130, 1135 (8th Cir. 1998). Accordingly, Qwest's motion for summary judgment as to the disparate treatment claim will be granted.

 B. Sexual Harassment

A prima facie claim of sexual harassment is established by evidence that: 1)

Plaintiff is a member of a protected class; 2) she was subject to unwelcome harassment; 3) the harassment was based on membership in the protected class; and 4) the harassment affected a term, condition or privilege of employment. Frieler v. Carlson Mktg Group, Inc., 751 N.W.2d 558, 571, n.11 (Minn. 2008). To be actionable, the harassment must have been so severe or pervasive that it altered the conditions of employment. Whether Plaintiff was subjected to a hostile work environment must be determined in view of the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive uttering. Gagliardi v. Ortho-Midwest, Inc., 733 N.W.2d 171, 177 (Minn. Ct. App. 2007).

    Plaintiff alleges that Carlson rubbed her leg/knee during a performance evaluation, and that Carlson repeated this conduct on five other occasions. Carlson also allegedly asked Plaintiff if she was gay. Plaintiff further alleges that Carlson began to harass Plaintiff by falsely accusing her of lying, and by placing a letter containing this false accusation in her personnel file. Plaintiff further alleges the fact that Carlson did not discipline male employees for mistakes or misconduct on the job and were given preferential work assignments, work

vehicles and overtime supports her sexual harassment claim.

Qwest argues that Plaintiff's allegations of harassment are not sufficiently severe or pervasive to support a claim under the MHRA. See LeGrand v. Area Resources for Community and Human Servs., 394 F.3d 1098 (8th Cir. 2003) cert. denied 546 U.S. 813 (2005) (evidence that plaintiff subjected to unwelcome sexual advances on three occasions did not establish genuine issue that plaintiff was subjected to a severe and pervasive working environment); Duncan v. General Motors Corp., 300 F.3d 928 (8th Cir. 2002) cert. denied 538 U.S. 994 (2003) (evidence that supervisor: proposed an intimate relationship, improperly touched plaintiff's hands on multiple occasions, requested plaintiff sketch a sexually objectionable planter, posted of a "Man Hater's Poster" featuring plaintiff as the president and requested plaintiff type the "He-Men Women Hater's Beliefs", not sufficient to withstand summary judgment).

Plaintiff responds that Carlson's actions toward her in particular, and to women in general, did affect a term, condition or privilege of employment, because it caused her to become very emotional at work, as well as cause her to experience health problems. See Moring v. Ark. Dept. Of Corr., 243 F.3d 452 (8th Cir. 2001) (evidence that co-worker engaged in conversation of a sexual nature,

appeared at plaintiff's door barely closed, sat on her bed and attempted to kiss plaintiff sufficient to withstand motion for summary judgment); Rorie v. U.P.S., 151 F.3d 757 (8th Cir. 1998) (male supervisor who pats female employee on back and tells her she smells good, coupled with evidence that supervisor engaged in conversation of a sexual nature regarding co-worker's private parts, and was constantly flirting with plaintiff sufficient to withstand summary judgment).

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to establish that genuine issues of material fact exist with respect to her claim of sexual harassment. The fact that Carlson may have inappropriately touched the Plaintiff's knee on more than one occasion is not sufficient to establish a severe and pervasive work environment. Plaintiff does not allege that Carlson made any sexual or otherwise inappropriate remarks to her, nor propositioned the Plaintiff in any way. Furthermore, the record contains no evidence that Plaintiff felt intimidated by this conduct. In fact, when she reported one incident where Carlson touched her knee, Plaintiff jokingly told a co-worker that Carlson wants to be her girlfriend. Garbett Dep. at p. 127.

The only other evidence submitted by Plaintiff in support of this claim is her generalized deposition testimony that male employees were treated

differently than female employees. Plaintiff also alleges that she was harassed by Carlson as evidenced by the fact that Carlson placed a letter in her personnel file accusing Plaintiff of lying as to her whereabouts on a particular day, and that the other two technicians involved did not have a letter placed in their file. Plaintiff conceded at her deposition, however, that the other two technicians were women, and that one was also gay. Plaintiff Dep. I at p. 30; Garbett Dep. at p. 16-20. Accordingly, this incident does not support Plaintiff's claim that the harassment was based on sex.

Because the totality of the circumstances do support her claim that she was subjected to harassment that affected a term, condition or privilege of employment, Qwest's motion for summary judgment as to Plaintiff's sexual harassment claim will also be granted.

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment [Doc. No. 17] is GRANTED. The Complaint is dismissed with prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Date: August 24, 2008

                                                  s/Michael J. Davis
                                                  Michael J. Davis
                                                  Chief Judge, United States District Court